## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SHAMAIR BUCKNER                         :
                                        :
            Plaintiff,                  :      CASE NO.
                                        :
    v.                                  :      TRIAL BY JURY DEMANDED
                                        :
AAA CLUB ALLIANCE, INC.                 :
                                        :
            Defendants.                 :

## COMPLAINT

## THE PARTIES

1.      Plaintiff, Shamair Buckner ("Plaintiff") was at all times relevant to this complaint a resident of Newark, Delaware.

2.      Defendant, AAA Club Alliance, Inc., ("Defendant") is a public corporation organized and existing under the laws of the State of Delaware.

## JURISDICTION

3.      This Court has jurisdiction based upon the existence of a question arising under the laws of the United States of America.  This action arises under Title VII, of the Civil Rights Act of 1954, 42 U.S.C. §2000e, et.seq., as amended by the Civil Rights Act of 1991, §704 of Title VII. Accordingly, this Court has jurisdiction over the controversy based upon the provisions of 42 U.S.C. §2000e-5(f)(3) as well as 28 U.S.C. §§1331 and 1334. In addition, this action is being brought pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Civil Rights Act of 1991, Pub. L. 102-

166, 105 Stat. 1071 (Nov. 21, 1991), to redress and enjoin the discriminatory employment practices of the Defendant.

## VENUE

4.      The unlawful employment practices alleged herein were committed within the State of Delaware.  Accordingly, venue lies in the United States District Court for the District of Delaware under 42 U.S.C. §1339(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      Prior to the filing of this action, the plaintiff timely filed a charge of discrimination with the Delaware Department of Labor and the Equal Employment Opportunity Commission May 2018 and a subsequent Charge of Discrimination for retaliation on October 4, 2018 which occurred during her employment with AAA Club Alliance, Inc ("AAA").

6.      On or about June 13, 2019, the EEOC issued Plaintiff a "Right to Sue Notice" which was received by Plaintiff  on or about June 15, 2019.  *EEOC Right to Sue Notice* attached as Exhibit 1.

## FACTS

7.      Buckner is 36 year old black female who began her employment as a Benefit analyst with AAA Club Alliance, Inc. ("AAA") on November 30, 2015.

8.      Ms. Buckner regularly worked 40 hours a week without complaint.

9.      By all accounts, Buckner was a hardworking and devoted employee.

10. Ms. Buckner was initially offered a starting yearly salary of $49,500.00. Ms. Buckner requested $50,000.00 which was granted.

11. In January 2016, AAA announced they would be leveling worker pay companywide to match the local area salary expectations. At that time, Buckner's pay was below the area median threshold for the position she held.

13. By custom, AAA gives annual raises in March and bonuses in April.

14. Ms. Buckner did not receive a pay raise or bonus until she was already employed 15 months (March 2017).

15. The raise was $1000 which leveled Buckner to the base income range for the area.

16. Buckner received an additional increase ad-hoc one month later (April).

17. Buckner requested the raise since she had not received a bonus or raise for past 16 months.

18. However, the raise was only approved because Buckner was assigned additional responsibilities including billing for associates on leave of absence, which this was not part of her original duties and responsibilities.

19. Despite being given these additional duties and responsibilities, Buckner did not receive a promotion.

20. In February 2018, Buckner spoke with her manager Christine

Caruso about both her performance and promotional opportunities.

21.    Buckner complained that her rating had decreased despite the fact that her performance was mistake free and generally better than the year before.

22.    During the conversation, Buckner complained that Caruso intentionally removed a key factor in the calculation of her rating, which was, "Learning the Job".

23.    In 2017, Buckner was given the additional responsibility of Benefits Billing and Administration which was not taken into consideration.

24.    In response, Caruso informed Buckner that a promotion would require more responsibilities.

25.    All of Buckner's white co-workers pay increased approximately $10,000 during the same time period her pay increased only $6,500.00.

26.    White female Stephanie Oliver went from $24/hr. as a part-time associate to about $62,000 as a Benefits Analyst 2.

27.    White male Christopher Keville went from $43,500.00 as a full time Benefits Coordinator to $52,500 as a Benefits Analyst I. Buckner went from $50,000 as a Benefits Analyst 1 to $56,500 in the same role.

28.    Gina Small (white female), Christine Caruso (white female) and

other members of her team received promotions in the last two years as well. All of these employees were white.

29. Throughout her employment, Buckner's manager (Caruso) regularly set Buckner's employment annual goals very late.

30. The goals were due in December but were not set until late January.

31. Buckner's requests for career advancement were regularly denied.

32. Below is a sampling of the requests made by Buckner to Caruso:

a. 9/26/16: Buckner asks Caruso to pay for her Professional Human Resources Certification ($500). Buckner was told it was not in the budget and Caruso would budget for it in 2017. However, per the company's CAM 300 Continual Learning Regarding Professional Certifications, it is at management's discretion. At this point, Buckner was employed for over one year and had not been afforded the opportunity for additional training. Whereas, associates like Gina Small, were allocated annual company-paid training out of state, including flight/hotel and per diem for Wellness conferences.

b. 6/2017: Buckner requested training for Project Management Professional Certification because she noticed AAA constantly paying outside companies several thousands of dollars to handle various projects for the

Benefits Department. Buckner was highly involved in these projects. If Buckner obtained certification, AAA could cut out the middleman and save the company money. The request was denied.

c.    7/17: Gina Small was sent to Minnesota for a conference to learn about things in the wellness industry, which was part of the responsibilities for the Benefits team. AAA was also discussing sending Oliver to New York City for Workday HR Information System training. Buckner was not afforded this training.

d.    10/17: Buckner requested PM Certification training. Her request was denied.

e.    1/18: Buckner spoke to her manager (Caruso) regarding career training. Caruso pushed Buckner towards free Medicare training, which would not add value towards Buckner's career growth.

f.    In addition, Buckner requested a coach certification with validation. Buckner often coached associates in benefits enrollment, Medicare, 401k Administration, and the retirement readiness. This request was also denied.

33.    AAA continually rejected Buckner's request for memberships and certification with various professional organizations.

34.    Buckner's manager only pushed free training to Buckner, which she

did on her own unpaid time.

35.   Buckner's request for advancement and training were regularly denied while Buckner's comparable white colleagues were given access to paid training and career advancement.

36.   In March 2018, the position of Benefits Technical HR Analyst was announced.

37.   Buckner expressed an interest in the position to her supervisor.

38.   Caruso stated she would only hire someone with technical "Workday" training and a strong history of using the "Workday" system.

39.   Buckner opted in and asked to sign up for the "Workday" training to ensure her skills were up to par.

40.   Buckner had three years of experience using the system.

41.   Caruso stated she didn't have the funding to send Buckner for "Workday" training.

42.   In June, Eric Bowden was hired as the HR Technical Benefits Analyst at almost $12,000 more than Buckner was earning.

43.   A week after starting, he was attending the "Workday" training that Caruso refused Buckner and said she did not have the budget for.

44.   In May 2018, Buckner filed a Charge of Discrimination against AAA regarding race discrimination.

45. On September 20, 2018, after receiving Bucker's Charge of Discrimination, AAA put Buckner on administrative leave and then discharged her on September 28, 2018 for allegedly misusing company employee information.

46. Employee information regarding salary and pay was readily available to Buckner in her employment capacity.

47. By accusing Buckner of misconduct, AAA is attempting to deflect from their discriminatory practices and retaliate against Buckner.

48. AAA claimed they conducted an IT audit to see how Buckner obtained the information.

49. Buckner filed her discrimination claim in May and therefore any review of information Buckner reviewed in September is irrelevant.

50. In addition, all the information Buckner presented was discovered via proper means.

51. The information presented by Buckner was obtained from spreadsheets which she used on a daily basis to audit her work (i.e.. the 40lk plan, termination reports, etc.).

## COUNT I-RACE DISCRIMINATION/DISPARATE TREATMENT

52. Plaintiff hereby incorporates by reference all previous paragraphs as though set forth in full herein.

53. Such acts as described above by defendants, its agents and employees, constitute unlawful race discrimination against Plaintiff in violation of Title VII, 42 U.S.C. §2000(6), et seq.

54. As a direct and proximate result of Defendants' unlawful discrimination, in the nature of disparate treatment, by and through its agents and employees, Plaintiff has been injured and has suffered and will continue to suffer pain, humiliation, anxiety, depression, mental anguish, emotional distress, physical manifestation of anxiety and the loss of past and future wages and benefits.

## COUNT II- RETALIATION

55. Plaintiff hereby incorporates by reference all previous paragraphs as though set forth in full herein.

56. Such acts as described above by Defendant, AAA, its agents and employees constitute unlawful retaliation against Plaintiff for having complained of discrimination and harassment.

57. As a direct and proximate result of Defendants' unlawful retaliation, by and through its agents and employees, Plaintiff, Shamair Buckner, has been injured and has suffered and will continue to suffer pain, fear, humiliation, anxiety, depression, mental anguish, emotional distress, physical manifestation of anxiety and lost wages and lost benefits.

9

**WHEREFORE**, Plaintiff requests this Honorable Court to enter a judgment in his favor and against the defendants as follows:

a. Declare the conduct engaged in by the defendants be in violation of the plaintiff's statutory rights.

b. Award the plaintiff sufficient funds to compensate him for his losses, pain and mental suffering, which cannot otherwise be compensated by equitable relief.

c Award the plaintiff compensatory and punitive damages not otherwise specified.

d. Award the plaintiff any and all other liquidated damages, which would make the plaintiff "whole".

e. Award the plaintiff attorney fees, the costs of this action, pre-judgment and post judgment interest, and;

f. Such other and further relief as this Court feels proper.

## COUNT III:  THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

58. Plaintiff restates and realleges paragraphs 1–44, inclusive, as though set forth here in full.

59. Defendant has discriminated against Plaintiff by denying her the same rights as enjoyed by White employees with respect to the terms and conditions of

10

their employment relationship with Defendant and to the enjoyment of all benefits, privileges, terms and conditions of that relationship, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended.

60.    Defendant's conduct was intentional, deliberate, willful and conducted in callous disregard of the rights of Plaintiff.

61.    By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available under Section 1981, including but not limited to damages for mental anguish and punitive damages.


**THE POLIQUIN FIRM:**

/s/ Ronald G. Poliquin
RONALD G. POLIQUIN, ESQUIRE
Delaware Bar ID No. 4447
155 South Bradford Street, Suite 203
Dover, DE  19904
(302) 702-5500
Attorney for Plaintiff

Dated:  August 22, 2019

11